Robert J. McKennon (SBN 123176) *rm@mckennonlawgroup.com*
Nicholas A. West (SBN 309003) *nw@mckennonlawgroup.com*
**McKENNON LAW GROUP PC**
20321 SW Birch Street, Suite 200
Newport Beach, California 92660
Phone: 949-387-9595 | Fax: 949-385-5165

Attorneys for Plaintiff Kenneth McDonnell

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| KENNETH McDONNELL,<br><br>                    Plaintiff,<br><br>vs.<br><br>UNITED HEALTHCARE SERVICES, INC.; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.:<br><br>Action Filed:<br><br>Trial Date:<br><br>**COMPLAINT FOR RECOVERY OF ERISA PLAN BENEFITS; ENFORCEMENT AND CLARIFICATION OF RIGHTS; BREACH OF FIDUCIARY DUTY; PREJUDGMENT INTEREST AND ATTORNEYS' FEES**<br><br>[Filed Concurrently With:<br> - Civil Cover Sheet;<br> - Summons; and<br> - Certification of Interested Parties] |

Case No.:

# INTRODUCTION

1. Through his employment with American Sewer Detection ("ASD"), Plaintiff Kenneth McDonnell ("Plaintiff") had medical insurance with United Healthcare Services, Inc. ("UHC"). Plaintiff's medical insurance was provided as part of a group policy, No. 236669 (the "Policy") under a group benefits plan (the "Plan") governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). On UHC's behalf, ASD addressed enrollment matters and deducted premiums from Plaintiff's paychecks in order to pay for the various benefits he received under the Plan. In this capacity, ASD worked as UHC's agent. Unbeknownst to Plaintiff, in 2019, ASD needed to submit a list of Plan participants to UHC. Unfortunately for Plaintiff, ASD omitted Plaintiff from its list of covered employees. Even though it had omitted Plaintiff, it continued to deduct premiums for medical insurance from Plaintiff's salary. Plaintiff did not know that he was no longer insured. Whereas UHC sent Plaintiff a letter in November 2019 stating that his medical insurance was going to end, ASD actively informed Plaintiff that he was still covered under the Plan for medical insurance. In response to his inquiries about the cancelled insurance, ASD's representative stated in a text message, "It's not cancelled paperwork was incorrect for new year now it's sent and corrected." In fact, the paperwork had **not** been corrected. Contrary to that explicit statement, Plaintiff's medical insurance **was** terminated even though ASD continued to deduct the premiums for medical coverage from Plaintiff's salary. Unfortunately, Plaintiff learned that he had been provided with misinformation only after he became involved in a motorcycle accident. As a result of this accident, Plaintiff incurred approximately $43,000 in medical bills. When Plaintiff confronted ASD after UHC refused to pay his claim, ASD informed him that it had made a mistake, and attempted to pay Plaintiff $1,145.21, the premiums that it had deducted from Plaintiff's salary for his medical insurance. Due to UHC's agent's misrepresentations, all of which are imputed to UHC, Plaintiff has acquired



1  significant losses, namely, the cost of his medical bills due to his accident. He now
2  comes before this Court seeking to compel UHC to pay him for the harm he has
3  suffered as a result of its agent's gross negligence and misrepresentations and his
4  attorneys' fees, costs and interest.

## JURISDICTION AND VENUE

6      2.    Plaintiff brings this action to recover benefits and to enforce and clarify
7  his rights under Section 502(a)(1)(B) of ERISA, 29 U.S.C. Section 1132(a)(1)(B).
8  This Court has subject-matter jurisdiction over Plaintiff's claim pursuant to ERISA
9  Section 502(e) and (f), 29 U.S.C. Section 1132(e) and (f), and 28 U.S.C. Section
10  1331.

11      3.    Venue lies in the Central District of California, Eastern Division
12  pursuant to ERISA Section 502(e)(2), 29 U.S.C. Section 1132(e)(2), because
13  Plaintiff resides in this district, some of the breaches alleged occurred in this district
14  and the ERISA-governed plan at issue was administered in part in this district.

## THE PARTIES

16      4.    Plaintiff is an individual who, at all times relevant to this action, was
17  a citizen of the State of California, a resident of the City of Yucaipa in San
18  Bernardino County. Further, at all times relevant to this action, Plaintiff was a
19  participant, as defined by ERISA Section 3(7), 29 U.S.C. Section 1002(7), in the
20  Plan, which is at issue in this action.

21      5.    UHC, at all times relevant, administered the health insurance benefits
22  that were provided to Plan participants, including Plaintiff, by the Policy to ASD.
23  At all times relevant, ASD acted as UHC's agent with respect to collecting
24  premiums and addressing enrollment issues. *See Salyers v. Metropolitan Life Ins.*
25  *Co.*, 871 F.3d 934 (9th Cir. 2017); *Cho v. First Reliance Standard Life Ins. Co.*,
26  2021 WL 2885855 (9th Cir. 2021).

27      6.    The true names and capacities, whether individual, corporate, associate
28  or otherwise, of the defendants named herein as DOES 1 through 10, inclusive, are

unknown to Plaintiff at this time, who therefore sues DOES 1 through 10 by fictitious names and will ask leave of the Court to amend this Complaint to show the true names and capacities of DOES 1 through 10 when the same are ascertained; DOES 1 through 10 are sued as principals and/or agents, servants, attorneys or employees of said principals, and all of the acts performed by them were within the course and scope of their authority and employment.  Plaintiff is informed and believes and thereupon alleges that each of DOES 1 through 10 is legally responsible in some manner for the events referred to herein, and directly and proximately caused the damages and injuries to Plaintiff as hereinafter alleged.

## FACTUAL BACKGROUND

7. Plaintiff worked as a plumber for ASD from September 2014 through August 2020.  As part of his employment, he was eligible for various benefits under the Plan, including medical insurance.

8. ASD offered its employees the opportunity to enroll for medical insurance with UHC.

9. ASD addressed virtually all questions related to Plan benefits.  On UHC's behalf, it deducted insurance premiums from the salaries of its employees to pay UHC for medical insurance.  On UHC's behalf, it also addressed questions involving enrollment for coverage.

10. In 2019, ASD was required to provide UHC with a list of the various employees eligible for medical insurance under the Policy.  Even though Plaintiff was eligible for and paid for medical insurance, ASD omitted his name from the list.

11. In November 2019, Plaintiff received a letter from UHC.  This letter explained that Plaintiff's medical insurance would end on December 1, 2019.

12. In response to this letter, Plaintiff contacted Jan Laudeman of ASD.  Among her many duties, Ms. Laudeman addressed enrollment issues with medical insurance.  Plaintiff's conversation with Ms. Laudeman occurred via text message.



13. Via text message, on November 6, 2019 at 2:38pm, Plaintiff inquired, "Hey what's up with insurance got a letter in the mail saying it's canceled on 12/1/19?" In response to this message, Ms. Laudeman responded, "It's not cancelled paperwork was incorrect for new year now it's sent and corrected[.]"

14. In fact, the paperwork had **not** been corrected. Plaintiff's medical insurance was terminated without his knowledge on December 1, 2019.

15. Plaintiff continued to pay premiums for his medical insurance. As UHC's agent, ASD continued to deduct the premiums from Plaintiff's salary. On information and belief, the payments were submitted to UHC.

16. On August 29, 2020, Plaintiff was involved in a motorcycle accident. Plaintiff suffered a fractured heel, a knee injury and extensive "road rash."

17. Plaintiff received urgent medical care at the Orange County Global Medical Center. While at the hospital, the staff asked Plaintiff if he had medical insurance. He stated that he did. However, when the staff contacted UHC, it informed them that Plaintiff did not have any medical insurance with UHC.

18. Plaintiff contacted ASD to learn why UHC claimed that he did not have medical insurance. Brandon Taliaferro, a senior manager at ASD, initially stated that he did not know why UHC had taken that position. However, Mr. Taliaferro engaged in an investigation and discovered that, in fact, ASD had failed to enroll Plaintiff for medical insurance with UHC.

19. Mr. Taliaferro informed Plaintiff that he had attempted to convince UHC to cover the medical bills related to Plaintiff's accident, but that UHC had refused to do so.

20. After acknowledging that it had misinformed Plaintiff and that, due to its actions, Plaintiff had not been provided with the medical insurance he was entitled to under the Plan, ASD attempted to refund Plaintiff the premiums that Plaintiff had paid for medical insurance. On August 31, 2020, ASD provided Plaintiff with a check for $1,145.21. Plaintiff never deposited the check.



<s>

21. As a result of his accident, to date, Plaintiff has incurred approximately $43,000 in medical insurance bills.

22. Plaintiff reasonably, materially and detrimentally relied upon the representations made by UHC's agent, ASD.  UHC specifically arranged for ASD to handle enrollment and payment issues under the Policy on its behalf.  Plaintiff was specifically informed that he was covered under the Policy.  If not for these misrepresentations, Plaintiff could have acquired other medical insurance to provide for his health needs.

23. Plaintiff has subsequently learned that ASD has terminated its corporate existence.  As of March 15, 2021, the California Secretary of State business-entity database lists ASD's corporate "Status" as "Dissolution."

## FIRST CLAIM FOR RELIEF

To Recover Benefits, Attorneys' Fees, Pre-Judgment and Post-Judgment Interest under ERISA Plan – 29 U.S.C. Sections 1132(a)(1)(B), (g)(1)

(Plaintiff against UHC and Does 1 through 10)

24. Plaintiff incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

25. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan and/or to clarify his rights to future benefits under the terms of a plan.

26. At all times relevant, Plaintiff has been entitled to medical insurance benefits under the Policy and the Plan.  By denying Plaintiff's claim for medical insurance benefits, and by related acts and omissions, UHC violated, and continues to violate, the terms of the Policy and the Plan, and Plaintiff's rights thereunder.

27. UHC has failed to follow even the most rudimentary claims processing requirements of ERISA and of the Department of Labor Regulations and has failed to conduct a "full and fair review" of the claim denial, an action required by 29


</s>

U.S.C. Section 1133(2). Thus, even if the Plan vests discretion in UHC to make benefit determinations, no deference is warranted with regard to its handling of this claim. *See Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1465 (9th Cir. 1997); *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003) ("When decisions are not in compliance with regulatory and plan procedures, deference may not be warranted.").

28. A "prudent person" standard is imposed on ERISA fiduciaries. *See* 29 U.S.C. §1104(a)(1)(b). A "fiduciary" is also under a duty of loyalty and care to the beneficiaries of the Plan. *See* 29 U.S.C. Section 1104(a)(1). Under ERISA: (1) a fiduciary must perform its duties solely in the interest of Plan participants and beneficiaries and for the exclusive purpose of providing Plan benefits to them; (2) a fiduciary must act with care, skill, prudence and diligence; and (3) a fiduciary may not act in any capacity involving the Plan, on behalf of a party whose interests are adverse to the interests of the Plan, its participants or its beneficiaries. UHC's handling of Plaintiff's medical insurance claim falls far short of these standards.

29. For all of the reasons set forth above, the decision to deny medical insurance benefits to Plaintiff was arbitrary, capricious, wrongful, unreasonable, irrational, contrary to the evidence, contrary to the terms of the Plan and contrary to law. UHC abused its discretion by deciding to deny this claim, as the evidence shows that its denial decision was arbitrary and capricious. Further, the denial decision and related actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Insurance Co. v. Glenn*, 544 U.S. 105 (2008). The denial of Plaintiff's claim constituted an abuse of discretion.

30. As a direct and proximate result of the denial of medical coverage, Plaintiff has been improperly deprived of medical insurance benefits from



1  December 1, 2019 through the end of his employment at ASD in August 2020, and
2  he has incurred medical bills totaling approximately $43,000.

3      31.     As a direct and proximate result of the denial of his claims, Plaintiff has
4  been required to incur attorneys' fees to pursue this action and is entitled to
5  reimbursement of these fees pursuant to 29 U.S.C. Section 1132(g)(1).

6      32.     A controversy now exists between the parties as to whether Plaintiff is
7  entitled to benefits under the Policy and the Plan.  Plaintiff seeks the declaration of
8  this Court that he is entitled to benefits under the Policy and the Plan.  In the
9  alternative, Plaintiff seeks a remand to the claims administrator for a determination
10 of Plaintiff's claim that is consistent with the terms of the Policy and the Plan.

11     33.     Plaintiff alleges all of the same conduct against Does 1 through 10 as it
12 does against UHC in this First Claim for Relief and in this Complaint.

### SECOND CLAIM FOR RELIEF

Breach of Fiduciary Duty and for Equitable Relief Including Waiver, Reformation, Estoppel and Surcharge, and for Attorneys' Fees and Pre-Judgment Interest, under ERISA Plan – 29 U.S.C. Sections 1132(a)(3)(B), (g)(1)

(Plaintiff against UHC and Does 1 through 10)

18     34.     Plaintiff incorporates by reference each of the foregoing paragraphs of
19 this Complaint, as though fully set forth herein.

20     35.     Plaintiff asserts this Second Claim for Relief, seeking equitable relief
21 in the alternative to his First Claim for Relief, which sought the payment of Plan
22 benefits.  This is permitted under *Moyle v. Liberty Mutual Retirement Benefit Plan*,
23 No. 13-56330, 2016 WL 2946271, at *11, 14 (9th Cir. May 20, 2016) (holding that
24 ERISA claimants "may pursue simultaneous claims under 29 U.S.C. § 1132(a)(1)(B)
25 and § 1132(a)(3)" in the alternative).

26     36.     ERISA Section 502(a)(3), 29 U.S.C. Section 1132(a)(3)(B), permits
27 a plan participant or beneficiary like Plaintiff to bring a civil action against
28 fiduciaries like UHC to obtain "other appropriate equitable relief," including the



equitable remedies of waiver, reformation, estoppel and "surcharge" (i.e., "make whole" relief), in order to redress the fiduciary's violations of ERISA or an ERISA plan.

37. At all times relevant herein, a fiduciary relationship existed between Plaintiff and UHC. UHC and ASD funded the ASD employee welfare benefit plan and administered benefits provided to ASD's employees and their beneficiaries, including Plaintiff, by issuing the medical insurance policy that insured ASD's employees, including Plaintiff. On information and belief, ASD acted as the Plan sponsor and administrator of the Plan and controlled and was responsible for, among other things, sending notifications about Policy benefits, confirmations of coverage and premiums, accepting payments of premiums and administering other aspects of the Plan and the Policy. ASD also acted as UHC's agent for matters involving enrollment for Plan benefits, answering of questions related thereto and collecting of premiums. UHC acted as the claims administrator for Plaintiff's medical insurance claims and generally for medical insurance claims made under the Policy. At all times relevant, UHC has had the authority to grant or deny claims, including Plaintiff's claim for health insurance benefits. UHC acted as an ERISA fiduciary in connection with the Policy and Plaintiff's claim, including as a claim-review and policy-interpretation fiduciary. *See* 29 U.S.C. § 1002(21)(A)(i), (iii) ("a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan"); *Aetna Life Insurance Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir. 2000) ("When an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA 'fiduciary' under 29 U.S.C. § 1002(21)(A)(iii)."); *see also* 29 U.S.C. § 1002(21)(A)(i), (iii) ("[A] person is a fiduciary with respect to a plan to the


extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.").

38. UHC owed Plaintiff a duty of utmost loyalty and care to serve, in good faith, in a manner that was in the best interests of Plaintiff, who was a Plan participant. As a fiduciary, UHC owed Plaintiff a duty to administer the Policy and the Plan solely in Plaintiff's interest, not its own interest. UHC owed a duty to disclose material facts concerning the Policy and the Plan to Plaintiff, to accurately provide information and advice to Plaintiff and to not mislead him with misrepresentations regarding material information about benefits or Plan terms, so that he could make appropriate decisions about his coverages under the Policy. When UHC's agent, ASD, actively informed Plaintiff that the errors in his enrollment had been corrected, UHC violated this duty. *See generally Salyers*, 871 F.3d 934; *Cho*, 2021 WL 2885855.

39. UHC owed a fiduciary duty to affirmatively provide Plaintiff with information about benefits that it knew or should have known would be harmful to withhold. *See Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995). This included a fiduciary "obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *Id.* Finally, it included a duty to investigate suspicions that UHC and its agent had, and alert Plan participants and beneficiaries of any doubts that they had that may have adversely impacted their medical insurance. *Id.*

40. UHC breached its fiduciary duties to Plaintiff by, among other things:
- Through its agent, informing Plaintiff that he was covered under the Policy for medical insurance when its position was that he was not.

-9-

- Repeatedly accepting payments of premiums that ordinarily would provide Plaintiff with medical insurance benefits, even though its position was that he was not covered under the Policy.
- Denying Plaintiff's claim for medical coverage based on the assertion that he was not covered under the Policy.
- Failing to provide Plaintiff with the medical coverage he had paid for through regular deductions from his salary.

*Waiver / Estoppel Remedy*

41. UHC is estopped from asserting, and/or waived its right to assert, lack of coverage, because of its misrepresentations to Plaintiff concerning his coverage and its ongoing acceptance of premiums.

42. Based on the facts alleged above, UHC intentionally, knowingly and voluntarily relinquished any right under the Plan to require that Plaintiff be actively included on any lists of Plan participants to be provided with medical coverage.

43. Giving effect to the waiver in this case does not expand the scope of the ERISA plan. Rather, it provides Plaintiff with an available benefit for which he paid.

44. Furthermore, UHC's misrepresentations through its agent and Plaintiff's reasonable reliance thereon resulted in Plaintiff's injury. Plaintiff would have secured medical insurance had it not been for the misinformation about his medical coverage. Due to this misconduct, Plaintiff never obtained separate medical insurance to pay for any medical care that may arise.

45. Waiver is the intentional relinquishment of a known right. *See Gaines v. Sargent Fletcher, Inc. Group Life Insurance Plan*, 329 F.Supp.2d 1198, 1222 (C.D. Cal. 2004). Courts will find waiver where a party acts so inconsistently with an intent to enforce the right that it induces a reasonable belief that the right has been extinguished. *See Intel Corp. v. Hartford Accident & Indemnity Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991). Courts apply waiver where the insurer accepted



premium payments with the knowledge that the insured did not meet the requirements for coverage. *See Gaines*, 329 F.Supp.2d at 1222; *Pitts v. American Security Life Insurance Co.*, 931 F.2d 351, 357 (5th Cir. 1991). Under agency theory, a principal cannot argue ignorance of a lack of coverage if its agent had such knowledge. *See generally Salyers*, 871 F.3d 934; *Cho*, 2021 WL 2885855.

46. Here, UHC waived and/or is estopped from enforcement of the coverage requirements because, through its agent, it acted inconsistently with the intent to enforce such a right through affirmative statements of coverage and acceptance of premium payments for medical insurance coverage. UHC intentionally, knowingly and voluntarily relinquished any right under the Policy to require Plaintiff to be properly enrolled for medical insurance coverage. Through its agent, UHC actively informed Plaintiff to disregard its previous communications and only informed Plaintiff of a purported lack of coverage after the covered loss occurred, Plaintiff's motorcycle accident.

47. Furthermore, UHC is estopped from refusing to pay Plaintiff's medical bills. To establish estoppel under ERISA, a party must establish that:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Greany v. W. Farm Bureau Life Insurance Co.*, 973 F.2d 812, 821 (9th Cir. 1992).

48. Here, the first requirement is satisfied because UHC and ASD knew that Plaintiff was not on the list of Plan participants for medical coverage. The second requirement is satisfied because Plaintiff received explicit representations from UHC's agent, ASD, that he was still covered under the Policy and, on information and belief, UHC repeatedly received premiums to pay for Plaintiff's coverage under the Policy. The third requirement is satisfied because Plaintiff did



1  not know that UHC did not intend to honor any claims for medical benefits under
2  the Policy.  The fourth requirement is satisfied because Plaintiff reasonably and
3  detrimentally relied upon UHC's agent's representations by not acquiring separate
4  medical insurance and, instead, paid premiums for the coverage with UHC.  On
5  information and belief, the Policy is ambiguous, and the representations directly
6  address the ambiguity in the Policy.  Plaintiff further alleges that by continuing to
7  represent that Plaintiff was covered and by accepting premiums under the Policy,
8  there exist extraordinary circumstances such that this type of equitable remedy is
9  available to Plaintiff.

*Reformation Remedy*

10
11    49.    Plaintiff is entitled to the equitable remedy of reformation to conform
12  the Plan and the Policy in accordance with Plaintiff's reasonable expectations.
13    50.    UHC committed equitable fraud and was grossly negligent by
14  misrepresenting that Plaintiff had medical coverage when in fact he did not.  As a
15  result of UHC's fraudulent representations and its gross negligence, Plaintiff
16  reasonably but mistakenly expected that he would have medical coverage should the
17  need arise.  These representations were sufficient to bind UHC to its fraudulent and
18  grossly negligent representations.  Reforming the Plan and the Policy to accord with
19  Plaintiff's reasonable expectations is an appropriate equitable remedy.  *See*
20  *generally CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).

*Surcharge Remedy*

21
22    51.    Plaintiff is entitled to the equitable remedy of surcharge, i.e., to be
23  made whole as a result of UHC's breaching its fiduciary duties to him, including
24  both compensatory damages for actual harm caused by UHC's breaches of its
25  fiduciary duties.  *See Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d
26  1162, 1167 (9th Cir. 2012).
27    52.    As to compensatory damages, "The beneficiary can pursue the remedy
28  that will put the beneficiary in the position he or she would have attained but for the



[fiduciary's] breach." *Id.* Plaintiff would have secured health insurance, with either UHC or another insurer, but for UHC's breaches of fiduciary duties by, among other things, failing to provide Plaintiff with accurate information. Plaintiff would have secured medical insurance of value at least equal to that which he acquired through UHC, and he would have benefited from that coverage if UHC had not breached its fiduciary duties. As a proximate result of those breaches, Plaintiff has been actually harmed in the amount of approximately $43,000 and is entitled to collect that amount from UHC, and to be made whole as a surcharge.

53. Plaintiff alleges all of the same conduct against Does 1 through 10 as it does against UHC in this Second Claim for Relief and in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court grant the following relief against all Defendants:

1. For all Plan and Policy benefits due and owing Plaintiff, including payment of his approximately $43,000 in medical bills related to his motorcycle accident.

2. For costs and reasonable attorneys' fees pursuant to 29 U.S.C. Section 1132(g).

3. For pre-judgment and post-judgment interest on the principal sum, accruing from the date the obligations were incurred. *See Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007) ("A district court may award prejudgment interest on an award of ERISA benefits at its discretion."); *Drennan v. General Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992). Specifically, Plaintiff seeks interest at the rate of 10% per annum, pursuant to California Insurance Code Section 10111.2.

///
///



4. For such other and further relief as this Court deems just and proper.

Dated: October 4, 2021                              **McKENNON LAW GROUP PC**

By: _____
ROBERT J. McKENNON
NICHOLAS A. WEST
Attorneys for Plaintiff,
Kenneth McDonnell